### FRANK F. SANDERS

*v.*

### JAMES E. WAGNER and others, executors &c.

In September, 1874, the complainant exchanged certain "unseated" lands in Pennsylvania for property of defendants' testatrix in this state, by deeds with full covenants. After testatrix's death, in January, 1875, her executors, the defendants, discovered that there was no title in complainant on record for the Pennsylvania lands, and that it had been sold for taxes in June, 1874, and the tax title had become absolute. In June, 1877, they paid the owners of the tax title $250 for all their right, title and interest in the property, and took a deed to themselves as "trustees under the will" of the testatrix. In December, 1877, they brought an action of covenant against the complainant, for breach of the covenants in his deed, which action, through complainant's mistake, was undefended, and judgment by default obtained. On bill for relief, and an injunction against such judgment,—*Held*,

(1) That the mistake of complainant, having been satisfactorily shown, is sufficient to retain the bill.

Sanders *v.* Wagner.

(2) That he could also show that the taxes on both properties, at the time of the exchange, were excepted from the covenants in the deeds, by an agreement between the parties.

(3) That he could also show that he had, at that time, a deed for the Pennsylvania lands, which he has since recorded.

(4) That jurisdiction is also retained, since the redemption deed was taken by the defendants as trustees, and not as executors, and as that deed makes no reference to the tax title, it is doubtful whether the complainant could, at law, avail himself of it as an extinguishment of the tax title.

(5) That the complainant is, in equity, entitled to the benefit of the title so acquired by the executors, on re-imbursing them fully ; and that, notwithstanding they did not employ testatrix's money to redeem, and took the title as trustees instead of executors ; that the tax title had become absolute before they redeemed, and that the complainant's liability to damages on his covenant had become fixed.

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. Theo. Little,* for complainant.

*Mr. A. Mills,* for defendants.

The Chancellor.

The complainant, in September, 1874, exchanged certain "unseated" (wild, unimproved) land in Pennsylvania, owned by him, with Sarah A. Warner, the defendants' testatrix, for certain real estate in Morristown belonging to her. Each delivered to the other a deed for the property conveyed by him or her, with full covenants, including covenants against encumbrances, and covenant of warranty general, but the deed to the complainant declared the conveyance to be subject to a mortgage for $5,000 on the property.

Mrs. Warner died in January, 1875.   By her will she appointed the defendants her executors, and devised her estate to them in trust.   Some time after her death they discovered that there was no title in the complainant of

record for the Pennsylvania land, and that it was sold June 8th, 1874, for taxes, and the title under the tax sale had become absolute. June 27th, 1877, they paid to the owners of the tax title $250 for all their right, title and interest in the property, and took a deed therefor from them to themselves as "trustees under the last will and testament of Sarah A. Warner, deceased." In December, 1877, they brought, as executors of Sarah A. Warner, deceased, an action of covenant against the complainant, in the supreme court of this state, upon the covenants in the deed from him to their testatrix, assigning, for breaches, the want of title and the encumbrance of the tax lien, and the loss through it of the title conveyed by him to her. He appears not to have defended the suit, although duly summoned. He is a physician. He spoke to his father-in-law, A. W. Bell, esq., a practicing lawyer of this state, in whose family he lived, and supposed the latter would give it attention, but, in fact, neither the complainant nor Mr. Bell paid any attention to it, until the latter discovered the suit on the list of causes of the Morris circuit court, at the term of May, 1878. It was down on the list for assessment of damages by writ of inquiry on a judgment by default.

On May 10th, 1878, the bill in this cause was filed for relief. It alleges that there was an understanding and agreement between the complainant and Mrs. Warner, at the time of the exchange, that, notwithstanding the covenants in the deeds, the lands conveyed thereby respectively were subject to tax, which each grantee was to pay, and that the covenants against encumbrances should not apply to the tax. It states, also, that the defendants redeemed the Pennsylvania land in 1877, and that the complainant (if he is liable at all to respond in respect to the tax) ought, in equity, to have the benefit of that redemption; that he, in fact, had, when he conveyed to Mrs. Warner, a valid title to the land, by a deed which, though duly delivered, was then unrecorded, but which he has since then put on record. It avers that he intended to defend the suit, and was surprised

to find that it had not been attended to by Mr. Bell, as his attorney. It prays answer and an injunction to restrain the defendant from proceeding upon the judgment, and it prays relief generally.

That the complainant was guilty of negligence in not giving his attention to the suit, is very clear. Mr. Bell appears not to have understood that he was relied upon to defend the action, nor does he seem to have understood that a suit had been begun, until he saw it on the list. He appears to have supposed that the principal, if not the only, cause of complaint in respect of which suit was threatened, was the alleged defect of title, which he knew was a mistake. But whatever may have been the reason of the inattention, there is no evidence of any disposition on the part of the complainant or Mr. Bell to let the suit go undefended, and I am satisfied that the fact that the suit was undefended was due to some mistake. And though it may be that a motion in the supreme court to open the judgment might be successful, yet there is a feature in the case which leads me to hold and dispose of the controversy here.

The complainant's allegation that there existed an understanding that Mrs. Warner was to pay the taxes on the Pennsylvania property, is not sustained, but it appears that both properties were, in fact, liable for unpaid taxes, the Pennsylvania property to the amount of $23.52, and the Morristown property to the amount of about $50. And it is to be borne in mind, in this connection, that the com plainant is, by reason of the fact that the defendants are sued in a representative capacity, deprived of the advantage of his own testimony.

That the defendants obtained from the purchasers at the tax sale the title of the latter for $250, is admitted. They claim that there was, through the encumbrance of the liens, an absolute failure of the title conveyed by the complainant, and they insist that the title which they obtained from the purchasers at the tax sale was and is their property; that

it was not a redemption, and that they have a right, and it is their duty as executors, to look to the complainant for such damages as by law they are entitled to, and that is equivalent to a claim of the amount of the greater part of the consideration money (which was stated in the deed to be $12,000) of the conveyance of the Pennsylvania property to Mrs. Warner. The action was brought to recover $10,000 damages. They took a deed from the purchasers of the tax title to themselves, not as executors, but as trustees, and that deed makes no reference to the tax title. It is at least doubtful whether at law the complainant could avail himself of that conveyance as an extinguishment of the tax title. *Miller* v. *Halsey, 2 Gr. 48; Rawle on Cov. 168.*

The defendants were under no obligation to pay the tax or to redeem the tax title, and they did not acquire the tax title until after it had become an absolute title in fee in the purchasers at the tax sale. The rule at law in such cases is thus laid down by Mr. Rawle: "When the purchaser thinks proper to sue, while the right of redemption is still open on his part, his damages will be limited by the amount of the redemption money. He is, however, it would seem, under no obligation to redeem, and if he let the time necessary for this purpose elapse, and the encumbrance thus becomes changed into an absolute title, his right to measure his damages by the consideration money will not be impaired by his not having availed himself of his right to redeem, nor, consequently, will the damages be affected by his refusal of a subsequent offer of the title for a sum less than the consideration money." *Rawle on Cov. 168, 169.*

But, the defendants having acquired the title, the complainant, under the circumstances, is entitled in equity to the benefit of it, on re-imbursing them for their outlay and trouble in obtaining it. *Galloway* v. *Finley, 12 Pet. 264; Williams* v. *Watkins, 3 Pet. 43; Burk* v. *Marshall, 6 How. 284.*

It does not appear that the defendants or their testatrix ever lost possession of the property. The tax title did not

become absolute until June 8th, 1876. The testatrix died in January, 1875, and the tax title was conveyed to the defendants, June 27th, 1877. The defendants, failing to induce the complainant to buy the title, were constrained to buy it themselves. As appears on the face of their deed, they bought it for the estate which they held in trust. They allege that they paid for it, not with money of the estate, but with money which they borrowed; but that will make no difference. They have acquired the title which they now set up, through their knowledge of the title which was conveyed to their testatrix by the complainant. Had there been no conveyance by him to her, it is safe to say they would never have known of the existence of the tax title which they have purchased for $250, and under which they claim to hold the property for which they claim to be entitled to recover damages to the amount of $10,000. It is to be presumed that they would not have been able to purchase the property for $250, but for the fact that they were the holders of the title conveyed by the complainant. Equity manifestly demands that they be held to have redeemed the property, as in fact they did. Whatever the legal phase of the transaction, it is clear that what they intended to do, and what they did in fact do, was to redeem the property from the tax title.

Where a vendee buys in an outstanding paramount title, he is entitled to damages against the vendor on his covenants to the extent of indemnity only. *Smith* v. *Compton, 3 Barn. & Ad. 407; Wood's Mayne on Dam. 286; Field on Dam. 378, 396, 397.*

The defendants deny that that rule can be applied in this case, because they, as trustees, bought the title of the purchasers at the tax sale after the tax title had become absolute, and the liability of the complainant to·damages to them, as executors, under the covenant,.had become fixed, and because they did not, as they insist, redeem or extinguish the tax title, but acquired the title under it after, it

Combs *v.* Shrewsbury Mut. Fire Ins. Co.

had become an absolute fee, as any strangers might have done; but the rule is applicable to them.

The complainant does not, in the bill, tender himself ready to do what equity requires—that is, pay what this court shall direct—but on the hearing he offered to amend his bill in that respect.

Such amendment will be ordered, and there will be a decree that, on his paying to the defendants such sum of money as will be sufficient to indemnify them for the money paid for the tax title, with interest, and their reasonable expenses of obtaining the tax title, and the costs of the suit at law and their costs of this suit, the defendants be perpetually enjoined from proceeding with the action at law or any like suit against the defendant for the same cause.